## THE EVENING JOURNAL ASSOCIATION, RELATOR, v. GEORGE GONZALES.

Argued November 2, 1910—Decided April 10, 1911.

The act of 1910 (*Pamph. L., p.* 98), providing that all expenses in-
curred by the municipal clerk of any municipality in advertising
in the newspapers election notices during the year 1909, shall
be paid by the municipality whose clerk authorized such adver-
tising, is special legislation.

On rule to show cause why a writ of *mandamus* should not
issue directed to George Gonzales commanding him as mayor
of the city of Hoboken to sign two warrants drawn by the
city clerk upon the city treasurer in favor of the Evening
Journal Association.

Before Justices REED, PARKER and BERGEN.

For the relator, *Arthur T. Dear.*

For the defendant, *Frederick N. Eberhard* and *Horace L.
Allen.*

The opinion of the court was delivered by

REED, J. Previous to the elections in the year 1909, the
city clerk of Hoboken gave a verbal order to a representative
of the Evening Journal Association to publish in the Jersey
City Journal a notice of a special election to be held in Sep-
tember, 1909, respecting the adoption of certain constitu-
tional amendments, and to publish a notice of registration
and of a general election in that year.

It appears that for some years previously, the clerk had
been accustomed to give similar directions to the newspapers
of the city of Hoboken, and that the board of chosen free-
holders had been accustomed to pay the bills rendered for such
advertisements. The bills for publishing the notices for 1909
the board of chosen freeholders refused to pay. An action

was brought against the county to recover the claim of the Evening Journal Association for the publishing of such advertisements. The action was brought in the District Court, and judgment was rendered for the defendant, and on appeal, the judgment was affirmed by this court.

The legislature passed an act in 1910 entitled "An act authorizing cities, towns, townships or other municipalities in counties of the first class to pay the costs or expenses incurred by the clerks in advertising any general, special or charter election held in this state during the year 1909." *Pamph. L.* 1910, *p.* 98.

Section 1 of this act provides that "all cost or expense so incurred in 1909 shall be paid by such municipality whose clerk authorized such advertising."

Section 2 provides that the board having the charge of the finances in such municipality shall set aside sufficient moneys to pay for this advertisement from any money not otherwise appropriated, and if there is not sufficient money from such sources, then to issue temporary loan bonds and to place in the next annual tax levy an amount sufficient to cover the money appropriated.

In the same year an act was passed requiring the clerk of every township, town, city or other municipality to cause to be inserted a notice in not more than two of the newspapers of the county wherein such municipality is situated, as said clerk shall select, setting forth a notice of the meeting of the board of registration, and of primary elections, and of general elections. *Pamph. L.* 1910, *p.* 473.

After the passage of these acts, the relator and other newspapers presented their claims to the mayor and council of Hoboken for publishing the notices of the general and the special elections for the year 1909. Common council, by resolution, ordered the claims to be paid. The mayor vetoed the resolution, and the council then passed the resolution over the mayor's veto. The mayor has refused to sign two warrants drawn by the city clerk upon the city treasurer for the payment of the claims of the Evening Journal Association.

As already observed, this application is for a writ of *mandamus* commanding the mayor to sign said warrants.

The counsel for the relator invokes especially the case of *Ahrens* v. *Fielder,* 14 *Vroom* 400, to support his claim to the writ. In that case, as in this, a mayor had refused to sign a warrant for the payment of a claim, which claim had been approved by a common council, but which was unsatisfactory to the mayor. This court awarded a writ of *mandamus* to compel the mayor to sign the warrant, because no legal ground was shown to invalidate the act of the common council in appropriating the money.

The court distinguished that case from the case of *Nicholson Pavement Co.* v. *Mayor of Newark,* 6 *Vroom* 396, because in the latter case an award of a contract had been made by a committee in violation of an ordinance from which alone the committee derived its power to make the award. The contract was in opposition to the requirements of the city charter. In that case it was held that if it be assumed that the mayor's duty to sign contracts was ministerial, yet the application for a writ of *mandamus* must be denied because of a defect in the proceedings which led up to the contract.

So, a writ was refused to compel a disbursing officer to pay a claim which had been allowed by the proper municipal authorities. *Clarke* v. *Jersey City,* 13 *Vroom* 94. So, a writ was refused to compel a mayor to sign bonds. *City of Paterson* v. *Barnet,* 17 *Id.* 62. So, also, a writ was refused to compel a mayor to sign a warrant for an official salary. *O'Hara* v. *Fagan,* 27 *Id.* 279. In each of these cases there was a question of regularity or legality in the claim for the recovery of which the writ was asked. Said Mr. Justice Dixon in the last-named case: "The writ cannot be claimed by such relators as their right, and the court in its discretion will refuse it, if circumstances appear which renders the justice or propriety of its allowance doubtful."

In the present case, the respondent challenges the legality of the claim of the Evening Journal Association on the ground that there is no authority for the payment of such claim by the city of Hoboken, unless such authority exists by

color of the act of 1910, and asserts that this act of 1910 is unconstitutional and void.

It is not contended on the part of the relator that there was any legislative authority for the incurrence of debts by the city of Hoboken for the publication of election notices in the newspapers previous to 1910. The county election board was required to publish notices of the meeting of the board for the purpose of registering voters. *Pamph. L.* 1898, *p.* 244. The expense for this service, however, was a county expense, and although the clerk of the city of Hoboken had been permitted to attend to the publication of notices in certain newspapers, it was considered as a county affair, the expenses of which, up to 1909, had been paid by the county. So, if there is any liability of the city of Hoboken to pay for this work for the year of 1909, it must rest entirely upon the act of 1910, page 98. This act regulates an internal affair of the cities to which it applies, namely, the expenditure of the money of the municipality. Consequently, the question arises whether it is general or special legislation.

The fact that the clerk of a city had in 1909 authorized advertising notices of a general or special election in a city during 1909, is made the test of the classification of the municipalities which shall constitute a class. It is difficult to see why the fact that a clerk ordered the advertising in one city differs that city from another city in which a mayor or a marshal has authorized the advertising. But if cities could be differentiated upon the ground that the clerk, rather than some other officer authorizes the advertising, there is a further difficulty. The title applies to municipalities in counties of the first class alone, but the body of the statute applies to any cities, towns, townships or other municipalities. The act, so far as concerns those municipalities outside of counties of the first class, is aside from the title, and so void.

Whether this part of the act is severable from the other part, and so the statute can stand so far as it applies to municipalities within counties of the first class, need not be discussed; for if so, the question is presented, upon what view can a city within a county of the first class be included alone

in a class, while cities elsewhere, of the same size, importance and condition be excluded? The size and population of the county has no relation to this legislation, so it is special.

Without reference to the contention that the title to the act is misleading, and thus avoids the act, we think the writ of *mandamus* must be refused.